Abran E. Vigil
Nevada Bar No. 7548
BALLARD SPAHR LLP
100 North City Parkway, Suite 1750
Las Vegas, Nevada 89106
Telephone: (702) 471-7000
Facsimile: (702) 471-7070
E-mail: vigila@ballardspahr.com

*Attorneys for Defendant,
Allstate Fire and Casualty Insurance
Company*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| TANYA TEODORO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY and DOES I-V and ROES VI-X, inclusive,<br><br>Defendants. | CASE NO.<br><br>NOTICE OF REMOVAL |

Defendant, Allstate Fire and Casualty Insurance Company, the only Defendant in this matter other than the unnamed "Doe" and "Roe" defendants ("Defendant" or "Allstate"), hereby removes to this Court the state court action described below. This removal is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), 28 U.S.C. § 1441 (a) and (b), and 28 U.S.C. § 1453, because this is a putative class action with more than 100 putative class members that seeks to recover more than $5,000,000, and it is also proper under traditional diversity of citizenship principles.

## NATURE OF THE CASE

1. Plaintiff filed this lawsuit on June 16, 2017, in the Nevada District Court, Clark County, Nevada, entitled *Tanya Teodoro v. Allstate Fire & Cas. Ins.*

1  *Co.; and Does I-V and Roes VI-X*, Case No. A-17757009-C. Defendant was served on July 12, 2017.

2.  Plaintiff alleges she and the putative class members were holders of insurance policies issued by Allstate, which agreed to provide Medical Payments ("MedPay") coverage to pay for "reasonable and necessary medical and hospital expenses resulting from accidental bodily injury while operating or occupying a vehicle insured under the [Allstate] automobile policy, or being struck as a pedestrian by a motor vehicle or trailer." (Compl., ¶ 6.) According to Plaintiff, Defendant, from November 3, 1980 to the present, engaged in a scheme whereby it violated its contractual obligations by "arbitrarily and unreasonably refus[ing] to pay the entirety of medical and hospital expenses billed by medical providers (collectively 'Billed Medical Expenses') to members of the Class as required by the insurance policy." (*Id.,* ¶ 7.)

3.  Plaintiff alleges she was involved in an automobile accident on March 18, 2016, which resulted in Plaintiff suffering bodily injury. (*Id.,* ¶ 13.) At the time of the accident, Plaintiff was allegedly insured under Allstate Policy No. 816201701 with MedPay coverage in the amount of $100,000.00. (*Id.,* ¶ 12.) Plaintiff alleges she incurred medical and hospital charges in the amount of $85,791.75, that she sought reimbursement from Defendant in this amount, but that Defendant refused to pay the full amount. (*Id.,* ¶¶ 14-17.) According to Plaintiff, Defendant presently owes her "among other things, Medical Payments benefits in the amount of at least $40,000.00," which it has allegedly "unreasonably and unlawfully" refused to pay. (*Id.,* ¶¶ 18-19.)

4.  Plaintiff purports to represent the following putative class:

> All Nevada residents: (1) who were, between November 3, 1980 to the present, insured by Allstate Fire and Casualty Company under a personal auto insurance policy(ies); (2) carried Automobile Medical Payments Coverage; (3) incurred medical and hospital expenses resulting from accidental bodily injury while operating or occupying a vehicle insured by Allstate, or

2

being struck as a pedestrian by a motor vehicle or trailer; (4) made a claim for Medical Payments benefits to Allstate under an Allstate policy; and (5) Allstate refused to pay the entirety of the reasonable and necessary medical and hospital expenses incurred by the claimant.

(*Id.*, ¶ 2.)

5.   Plaintiff asserts several claims on behalf of herself and the putative class: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Violation of Nevada's Deceptive Trade Practices Act-NRS 598 et seq.; (4) Unfair Claim Practices; and (5) Unjust Enrichment and Constructive Trust. (*Id.*, ¶¶ 27-63.)

6.   In her Breach of Contract Count, Plaintiff alleges "Allstate has caused actual financial loss and damage to Plaintiff and each Class member equal to . . . the difference between the Billed Medical Expenses and the reduced amount paid by Allstate. . . ." (*Id.*, ¶ 31.) Plaintiff refers throughout her Complaint to Plaintiff and the putative class members allegedly sustaining damage in this amount. (*See, e.g., id.*, ¶¶ 37, 45, 54.)

7.   In her Unjust Enrichment Count, Plaintiff alleges "Allstate has been unjustly enriched by wrongfully and fraudulently refusing to pay the entirety of the Billed Medical Expenses to Plaintiff and members of the Class. It would be inequitable and unjust for Allstate to retain such ill-gotten gains, which Plaintiff estimates to be well in excess of $5,000,000.00." (*Id.*, ¶ 60.)

8.   Plaintiff seeks, for herself and the putative class, "damages in the aggregate Claim Amount described in the Complaint for Plaintiff and each member of the Class"; "restitution to Plaintiff and the Class of the aggregate Claim Amount described in the Complaint for Plaintiff and each member of the Class"; punitive damages; and attorneys' fees. (*Id.*, p. 12, Wherefore Clause.)

3

DMWEST #16859683 v2

I.  **ALL THE REQUIREMENTS FOR REMOVAL UNDER CAFA ARE SATISFIED.**

**Class Action.**

9.  This lawsuit is a class action as defined by 28 U.S.C. § 1332(d)(1)(B). CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." *Id.* Plaintiff titles her Complaint a "Class Action Complaint for Compensatory and Punitive Damages," and expressly seeks certification of a class of Nevada insureds. (Compl, ¶ 2.) As such, this action is brought on behalf of a class as defined by CAFA.

**Diversity of Citizenship.**

10. At the time this lawsuit was filed and as of the date of this Notice of Removal, a member of the proposed class of plaintiffs and a defendant are citizens of different states, satisfying the minimal diversity requirement of 28 U.S.C. § 1332(d)(2)(A). At the time this lawsuit was filed and as of the date of this Notice of Removal, the Defendant was and is a non-Nevada citizen, with its principal place of business and state of incorporation in Illinois. (Declaration of Lynn Preston ("Preston Dec."), attached hereto as Exhibit A, ¶ 4.) And, at the time of the commencement of this action and as of the date of this Notice of Removal, the named plaintiff, Tanya Teodoro, was alleged to be and is a citizen of Nevada. (Compl., ¶ 1.)

**Amount in Controversy.**

11. CAFA confers original jurisdiction to the district courts "of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which -- any member of the class of plaintiffs is a citizen of a State different from any defendant." *Baumann v. Chase Inv. Services Corp.*, 747 F.3d 1117, 1120 (9th Cir. 2014) (*quoting* 28 U.S.C. § 1332(d)(2)-(A)). The Ninth Circuit has held that a defendant seeking removal of a

4

DMWEST #16859683 v2

putative class action must demonstrate, but only by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum. *Rodriguez v. AT & T Mobility Servs., LLC,* 728 F.3d 975, 981 (9th Cir. 2013). "No antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Sarro v. Nevada State Bank*, No. 216CV01756GMNGWF, 2016 WL 6909105, *2 (D. Nev. Nov. 23, 2016) (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014)).

12. A removing defendant need not submit detailed evidence with its removal notice, but need only show plausibly that removal jurisdiction exists. *Dart,* 135 S. Ct. at 554.

13. The Court may rely on the face of the Complaint to determine if the amount in controversy meets the jurisdictional minimum. *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 377 (9th Cir. 1997). If there is a challenge to removal by a class plaintiff, the removing defendant at that point may be required to support its notice of removal with more detailed evidence. *Dart,* 135 S. Ct. at 554.

14. Here, the Court need only review the face of the Complaint to see that CAFA's $5 million amount in controversy requirement is met. As noted above, Plaintiff expressly alleges "Allstate has been unjustly enriched by wrongfully and fraudulently refusing to pay the entirety of the Billed Medical Expenses to Plaintiff and members of the Class. *It would be inequitable and unjust for Allstate to retain such ill-gotten gains, which Plaintiff estimates to be **well in excess of $5,000,000.00**.*" (*Id.,* ¶ 60 (emphasis added).) So, based on compensatory damages alone -- *i.e.,* the amount of "Billed Medical Expenses" Defendant allegedly wrongfully failed to pay -- Plaintiff's Complaint explicitly puts the amount in controversy over the $5 million in controversy required for CAFA jurisdiction.

15. Moreover, as set forth in the Declaration of Lynn Preston, from June 16, 2011 through June 16, 2017 ( far less than Plaintiff's entire 37-year class period but

5

corresponding with the longest statute of limitations actually applicable to any of Plaintiff's claims), the total amount of medical bills that were not paid by Allstate under medical payments coverage was approximately $6.7 million, and the total number of claimants who had medical bills reduced under medical payments coverage was approximately 3,000. (Preston Dec., ¶¶ 5-6.) So, based on the actual data, as well as the Complaint allegations, CAFA's $5 million in controversy and 100 class member requirements are met here.

16.   But in addition, Plaintiff has expressly requested punitive damages. Plaintiff alleges throughout her Complaint that Defendant's conduct constitutes fraud and/or actual malice, which she claims justifies punitive damages under NRS 42.005.[1]  Nevada courts have found punitive damages awards of three times compensatory damages appropriate. *See, e.g., Countrywide Home Loans, Inc. v. Thitchener,* 124 Nev. 725, 745, 192 P.3d 243, 256 (2008) (citing NRS 42.005; stating the "district court remitted the jury's original punitive damage award of $2,500,000 to $968,070, three times the untrebled amount of the Thitcheners' trespass and conversion damages. . . . [W]e conclude that $968,070 was not unreasonable or clearly disproportionate to the amount of harm suffered by the Thitcheners or to the compensatory damage award.").

---

[1] Section 42.005 provides an award of exemplary or punitive damages made pursuant to this section may not exceed:
   (a) Three times the amount of compensatory damages awarded to the plaintiff if the amount of compensatory damages is $100,000 or more; or
   (b) Three hundred thousand dollars if the amount of compensatory damages awarded to the plaintiff is less than $100,000.
   2. The limitations on the amount of an award of exemplary or punitive damages prescribed in subsection 1 do not apply to an action brought against:
   * * *
   (b) An insurer who acts in bad faith regarding its obligations to provide insurance coverage[.]
NRS § 42.005.

17. However, while NRS 42.005 generally limits punitive damages to three times compensatory damages of $100,000 or more and $300,000 for compensatory damages of less than $100,000, *see* n. 1, *supra*, those caps do not apply to actions, such as this one, brought against insurers who allegedly acted in bad faith. *Id. See also Wallace v. U.S.A.A. Life Gen. Agency, Inc.*, 862 F. Supp. 2d 1062, 1072 (D. Nev. 2012) (punitive damages are available for "bad faith in breach of the implied covenant of good faith and fair dealing.").

18. For example, in *Merrick v. Paul Revere Life Ins. Co.*, 594 F. Supp. 2d 1168, 1191 (D. Nev. 2008), the court noted the "legislature specifically chose not to impose statutory caps on punitive damages for insurance bad faith," and found punitive damages awards against the defendant insurers with ratios of 8.18:1 and 9:1 appropriate.

19. Moreover, even where courts have found the egregious conduct that warranted a punitive damages award of 9:1 in *Merrick* was not present, they have nonetheless found punitive damages were properly included in the amount in controversy and denied the plaintiff's remand motion. In *Flores v. Standard Ins. Co.*, No. 3:09CV00501-LRH-RAM, 2010 WL 185949, *5 (D. Nev. Jan. 15, 2010), for example, the court explained to "establish the likely amount of punitive damages, the defendant may introduce evidence of jury verdicts in cases involving similar facts. . . . To this end, Standard has identified, in cases involving bad faith claims against insurers, various jury verdicts with substantial punitive damages awards." *Id.* (citing *Merrick, supra; Ace v. Aetna Life Ins. Co.,* 40 F. Supp. 2d 1125, 1136 (D. Alaska 1999) (where plaintiff brought bad faith claim against defendant insurer and jury initially awarded $27,009 for wrongful denial of nine months of long-term disability benefits, $100,000 for emotional distress, and punitive damages of $16.5 million, finding the maximum amount of punitive damages to be $950,000 and remitting punitive damages award accordingly (a 7.5:1 ratio of punitive damages to actual and potential harm)).

7

DMWEST #16859683 v2

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

20. The *Flores* court stated "the jury verdicts in these cases amply demonstrate the potential for large punitive damages awards in bad faith insurance cases. While the conduct at issue here might not be as egregious as the misconduct involved in these cases, Plaintiff nonetheless has asserted serious allegations of wrongdoing by Standard. As the additional amount needed to meet the amount-in-controversy requirement here is relatively small ($25,950.77, or $75,000 less $49,049.23), the court finds that Standard has demonstrated by a preponderance of the evidence that punitive damages will raise the amount in controversy over $75,000." *Id,* \*6. *See also Pereza v. Progressive Direct Ins. Co.*, No. 2:15-CV-77 JCM VCF, 2015 WL 1549270, \*4 (D. Nev. Apr. 8, 2015) ("Progressive has provided some evidence that punitive damage awards may be quite high in bad faith insurance cases. Although Progressive has not provided strong evidence to help adduce the likely amount of punitive damages in this case, this court recognizes that punitive damages are legally possible in this case, and that even a much smaller award of punitive damages than that provided in *Merrick* (*e.g.*, a 1:1 ratio of punitive damages to actual and potential harm) would likely put the amount in controversy over the jurisdictional minimum[.]").

21. Here too, punitive damages are included in the amount-in-controversy calculation. Defendant certainly does not concede that Plaintiff is entitled to such damages. However, viewing Plaintiff's Complaint as pled, which is the standard for removal analysis, *see, e.g., Singer*, 116 F.3d at 377, those damages should be included for purposes of determining the amount in controversy, just as they were in the above cases. Using a punitive damages ratio of just 3 times the potential compensatory damages in this case estimated by Defendant's Declarant, of approximately $ 6.7 million just for the June 16, 2011 through June 16, 2017 time period, yields an amount in controversy of over $20 million.

22. Moreover, a punitive damages ratio of just 1 times Plaintiff's estimated compensatory damages for the putative class of over $5,000,000 increases the amount

8

in controversy by over $5,000,000, for a total amount in controversy of over $10,000,000.

23. Alternatively, Plaintiff alleges her claim is typical of other putative class members. (Compl., ¶ 23.) If just 40 putative class members had compensatory damages in the amount of $40,000 -- *i.e.,* Plaintiff's alleged individual compensatory damages -- the total compensatory damages amount would be $1,600,000. With a punitive damages ratio of just 3:1, that would increase the amount in controversy by $4,800,000, to $6,400,000.

24. As the above cases show, in a case alleging bad faith against an insurer the punitive damages ratio is potentially much greater -- up to 9 times the compensatory damages. But here, even using much smaller ratios, the amount in controversy is clearly and indisputably over $5 million.

25. Moreover, that does not include attorneys' fees, which are also included in the amount in controversy, and which further increase the amount in controversy above $5 million. *See, e.g., Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007), *abrogated on other grounds, Rodriguez, supra; Galt G/S v. TSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).

26. In sum, given Plaintiff's Complaint allegations and all the calculations set forth above, the minimum CAFA jurisdictional amount requirement of $5,000,000 is easily satisfied here.

D. **Number of Proposed Class Member***s.*

27. As required by 28 U.S.C. § 1332(d)(5), the number of members of the proposed class here is at least 100 persons. Plaintiff herself alleges there are tens of thousands of class members. (Compl., ¶ 21.) In addition, as demonstrated by the Preston Declaration, the putative class as defined consists of approximately 3,000 class members just for the longest (6-year) statute of limitations applicable to Plaintiff's Complaint. (Preston Dec., ¶ 6.)

9

DMWEST #16859683 v2

### E. CAFA Applies to this Action.

28. CAFA applies to actions "commenced" on or after its effective date, February 18, 2005. This action was filed in June, 2017.

## II. THE EXCEPTIONS UNDER CAFA DO NOT APPLY.

29. Plaintiff bears the burden of establishing any applicable exceptions to CAFA jurisdiction. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021-24 (9th Cir. 2007). CAFA provides two mandatory exceptions and one discretionary exception to the application of federal jurisdiction. 28 U.S.C. § 1332(d)(3)-(4). None of these exceptions applies here. Each CAFA exception requires, as a starting point, an in-state defendant. 28 U.S.C. § 1332(d)(3)-(4) (requiring either "significant relief" to be sought from an in-state defendant (local controversy exception) or that the "primary defendant" be an in-state one ("home state" and discretionary exceptions)).

30. Here, the only named defendant, Allstate, is a non-resident citizen of Illinois. (Preston Dec. ¶ 4.) The citizenship of the unnamed Doe and Roe defendants is not considered for purposes of removal analysis. *See, e.g., Tatevossian v. Wells Fargo Bank,* No. CV1603135ABMRWX, 2016 WL 4367235, at *3 (C.D. Cal. Aug. 12, 2016) ("Plaintiff cannot expect that the presence of unnamed, unserved [Doe] defendants will destroy federal subject matter jurisdiction because, [i]n determining whether a civil action is removable on the basis of [diversity jurisdiction], the citizenship of defendants sued under fictitious names shall be disregarded.") (citation and internal quotation omitted). *See also Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1213 (9th Cir. 1980) (unknown defendants sued as "Does" need not be joined in a removal petition). As such, none of the CAFA exceptions applies here.

## III. ALTERNATIVELY, THE COURT HAS JURISDICTION UNDER TRADITIONAL DIVERSITY PRINCIPLES.

31. This Court also has jurisdiction over this case under traditional diversity of citizenship principles pursuant to 28 U.S.C. §§ 1332 and 1367. As noted above, Plaintiff and Defendant are completely diverse (Nevada citizenship for

10

Plaintiff and Illinois citizenship for the only Defendant), and the citizenship of the Roe and Doe defendants is not considered for purposes of jurisdictional analysis.

32. The requisite $75,000 amount in controversy for an individual plaintiff is satisfied here under 28 U.S.C. § 1332(a), and therefore this Court has supplemental jurisdiction over the entire putative class under 28 U.S.C. § 1367. *See Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 549 (2005) (where one of the named plaintiffs in the alleged class action satisfies the amount-in-controversy requirement, 28 U.S.C. § 1367 authorizes supplemental jurisdiction over the claims of the other plaintiffs); *Kanter v. Warner–Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001) ("if a named plaintiff in a diversity class action has a claim with an amount in controversy in excess of $75,000, 28 U.S.C. § 1367 confers supplemental jurisdiction over claims of unnamed class members irrespective of the amount in controversy in those claims"); *Reyes v. Wells Fargo Bank, N.A.*, 2010 WL 2629785, *6 (N.D. Cal. June 29, 2010) (same principle; denying motion to remand where named plaintiff's individual claim satisfied Section 1332(a)'s $75,000 amount-in-controversy requirement, and finding court had supplemental jurisdiction over the unnamed class members regardless of the value of the case as to those class members).

33. Here, Plaintiff's individual claim meets Section 1332(a)'s $75,000 amount-in-controversy requirement. As noted above, Plaintiff alleges that her individual compensatory damages include, "among other things, Medical Payments benefits in the amount of at least $40,000.00," which Defendant has allegedly "unreasonably and unlawfully" refused to pay. (*Id.*, ¶¶ 18-19.)

34. Moreover, Plaintiff seeks punitive damages for herself as well as for the class. (*Id.*, p. 12, Wherefore Clause.)

35. As was also shown above, courts have found punitive damages in ratios of 3:1 and even 9:1 appropriate in these types of cases. *See, e.g., Countrywide,* 124 Nev. at 745, 192 P.3d at 256 (finding punitive damages award of 3 times compensatory damages appropriate); *Merrick,* 594 F. Supp. 2d at 1191 (awarding

11

punitive damages at 9:1 ratio).

36. Here, a punitive damages award of just 3 times Plaintiff's alleged individual compensatory damages of $40,000 would bring the individual amount in controversy to $120,000. Even a much lower punitive damages ratio of 1:1 would bring the individual amount in controversy to $80,000. Either way, the individual amount in controversy exceeds $75,000.

37. Because it is clear that the jurisdictional minimum of $75,000 has been more than satisfied, this case is validly removed under traditional diversity jurisdiction principles. And, as noted, because Plaintiff's individual claim satisfies the amount-in-controversy requirement, the Court has supplemental jurisdiction over the claims of the putative class members. *See Allapattah Services, Inc.*, 545 U.S. at 549 (where one of the named plaintiffs in the alleged class action satisfies the amount-in-controversy requirement, 28 U.S.C. § 1367 authorizes supplemental jurisdiction over the other class members' claims); *Kanter,* 265 F.3d at 858 (same principle; where named plaintiff has a claim with an amount in controversy in excess of $75,000, Section 1367 confers supplemental jurisdiction over claims of unnamed class members).

## IV. THE OTHER PROCEDURAL REQUISITES FOR REMOVAL ARE SATISFIED.

38. Removal is timely under 28 U.S.C. §§ 1446(b) and 1453, because the Complaint is the first pleading, motion, order, or other paper from which it could first be ascertained that this action is one which is or has become removable. The Complaint was first served on July 12, 2017, and this Notice of Removal is filed on August 9, 2017 -- within thirty days after that initial service. In addition, venue is appropriate here because Plaintiff resides in this judicial district, and the alleged acts and omissions giving rise to this action occurred here. 28 U.S.C. § 1391. Pursuant to 28 U.S.C. § 1446(a), attached as Exhibit B is a copy of all the state court pleadings and process in this matter. Attached as Exhibit C is a copy of the notice of

12

filing of notice of removal in the state court. Defendant has, therefore, satisfied all the requirements for removal under 28 U.S.C. §1446 and all other applicable rules.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests this Court assume full jurisdiction over the cause herein as provided by law. Defendant intends no admission of liability by this Notice, and expressly reserves all defenses, motions, and pleas, including without limitation objections to the sufficiency of Plaintiff's pleadings and to the propriety of class certification.

DATED this 9th day of August 2017

BALLARD SPAHR LLP

By: __/s/ Abran Vigil_____
    Abran E. Vigil, Esq.
    Nevada Bar No. 7548
    100 North City Parkway, Suite 1750
    Las Vegas, Nevada 89106

*Attorneys for Defendant*
*Allstate Fire and Casualty Insurance Company*

DMWEST #16859683 v2

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5, I hereby certify that on August 9, 2017, an electronic copy of the foregoing **NOTICE OF REMOVAL** was served on the following counsel of record via the Court's electronic service system:

JESSIE SBAIH & ASSOCIATES, LTD.
Jessie Sbaih (#7898)
Ines Olevic-Salec (#11431)
The District at Green Valley Ranch
170 South Green Valley Parkway, Suite 280
Henderson, Nevada 89012
jsbaih@sbaihlaw.com
jolevic@sbaihlaw.com
*Attorneys for Plaintiff*

/s/ Mary Kay Carlton
An employee of Ballard Spahr LLP

DMWEST #16859683 v2